UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,          )
                                                              )
                    Plaintiff,                              )
                                                              )
v.                                                            )          No.:    3:22-CR-106-TAV-JEM-1
                                                              )
CORY J. DAVIS,                                      )
                                                              )
                    Defendant.                         )

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Jill E. McCook on August 5, 2025 [Doc. 177], recommending that the Court deny defendant's motions to dismiss the superseding indictment [Docs. 135, 138, 164] and deny defendant's motion to reconsider [Doc. 139]. Defendant has objected [Doc. 188]. The government has not responded and the time for doing so has expired. *See* E.D. Tenn. L.R. 7.1(a). Thus, the matter is now ripe for review. *See id.* Also before the Court are defendant's motions to dismiss that are not addressed by the R&R [Docs. 125, 187, 189].

For the reasons below, the Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 177] in whole and **DENIES** defendant's motions to dismiss [Docs. 135, 138, 164] as well as defendant's motion to reconsider [Doc. 139]. Because defendant's additional motions to dismiss raise the same issues as those addressed by the R&R, defendant's additional motions to dismiss [Docs. 125, 187, 189] are also **DENIED**.

## I.    Background

The Court presumes familiarity with the summary of the evidence and findings of fact as set forth in the R&R. Accordingly, the Court incorporates the background contained in the R&R [Doc. 177, pp. 2–5] into this memorandum opinion and order.

## II.    Standard of Review

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers defendant's motions, the government's responses, the R&R, and defendant's objections, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A general objection that merely restates an argument previously presented or simply voices a disagreement with a magistrate judge's suggested resolution "has the same effect[] as would a failure to object." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2021 WL 1540389, at *4 (N.D. Ohio, Apr. 19, 2021) (citation omitted); *see also United States v. Dawson*, No. 4:19-cr-206, 2020 WL 109137, at *1 (N.D. Ohio, Jan. 9, 2020) (citations omitted) ("[T]he Court is under no

2

obligation to review *de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs.").

## III.    Analysis

### A.    Timeliness

In the R&R, Judge McCook first concludes that, apart from his jurisdiction argument, all of defendant's grounds for dismissal should have been raised before the trial in this case [Doc. 177, p. 6]. Specifically, she noted that defendant's motions were "filed approximately two years after the expiration of the July 28, 2023, motion deadline, more than six months after his trial, and only weeks before his sentencing hearing" [*Id*. at 8]. And, ultimately, Judge McCook concluded that defendant had not shown good cause for the untimely filing of his motions to dismiss [*Id*. at 8–11].

Notably, defendant does not object to Judge McCook's findings regarding the timeliness of his filings. And the Court is in complete agreement that all of defendant's grounds for dismissal, with the exception of jurisdiction, are untimely, defendant has not shown good cause for his delay in raising these grounds for dismissal, and such are due to be denied on this ground. Nonetheless, for the sake of completeness, and in the alternative, the Court will address the merits of all of defendant's motions.

### B.    Jurisdiction/Venue

Judge McCook summarized defendant's jurisdictional arguments as follows:

Defendant contends that the Court lacks jurisdiction over his person or the charged drug conspiracy because he was charged in this case before he was properly dismissed from the Indictment in case number 3:22-cr-11, which charged him with the same offense [Doc. 138 pp. 4–5, 7–8, 10, 13–14]. He also alleges that the Court lacks 'territorial jurisdiction' because his

3

coconspirators Ariel Clayton and LaTeasha Brown, both charged in case number 3:22-cr-11, were arrested in the Northern District of Georgia and drugs and firearms were seized from Brown's apartment in that district [*Id*. at 5–7]. Defendant argues that the fentanyl seized from Brown and Clayton in Atlanta, Georgia, on December 21, 2021, was improperly used against him in the prosecution in this district without proof that the fentanyl had a detrimental effect within Tennessee [*Id*. at 15–17, 19].

[Doc. 177, p. 12 (footnote omitted)].

In addressing these arguments, Judge McCook concluded that the Court "unquestionably has jurisdiction over this case" because district courts of the United States have original jurisdiction over all offenses against the laws of the United States, and federal courts have personal jurisdiction over criminal defendants before them, whether or not they are forcibly brought into court [*Id*. at 13]. Judge McCook construed defendant's arguments as relating to whether this district was the appropriate venue [*Id*. at 13–14 n.11]. In addressing the venue issue, Judge McCook stated that "[d]efendant concedes venue regarding the May 20, 2021[,] events involving coconspirator Amber Nanney and methamphetamine but argues this was a separate, one-day conspiracy unrelated to the seizure of fentanyl in Atlanta, Georgia" [*Id*. at 14]. But Judge McCook noted that, at trial, Nanney testified that defendant was her methamphetamine supplier from the fall or winter of 2020 through May 20, 2021, and she sometimes met defendant at a house in Knoxville, Tennessee, to pick up drugs and pay him [*Id*. at 15]. Thus, Judge McCook concluded that venue properly lies in this district [*Id*.].

In his objections to the R&R, defendant appears to first contest the characterization of his arguments as relating to venue rather than jurisdiction [Doc. 188, p. 4 (objecting to the magistrate judge citing cases based on venue and arguing that "[j]urisdiction and venue

4

are not the same"). On the other hand, defendant states that his arguments do "not pertain to if a United State's [*sic*] District Court has jurisdiction over federal offenses under 18 U.S.C. [§] 3231" [*Id.* at 1]. Instead, he asserts that his arguments fall under 18 U.S.C. § 3232 and Rule 18 of the Federal Rules of Criminal Procedure [*Id.*]. But both Rule 18 and § 3232 address venue, rather than jurisdiction. Rule 18 is the first rule within Title V of the Federal Rules of Criminal Procedure, and that title is labeled "Venue." *See* Fed. R. Crim. P. 18. Section 3232 of Title 18 is contained within Chapter 211 of Title 18, which is labeled "Jurisdiction and Venue," but that section simply contains a reference to Rule 18 of the Federal Rules of Criminal Procedure. *See* 18 U.S.C. § 3232. Accordingly, the Court finds that Judge McCook correctly construed defendant's arguments as relating to venue, not jurisdiction.

Moreover, to the extent defendant challenges jurisdiction, Judge McCook correctly determined that this Court has jurisdiction over a criminal case involving a violation of federal law. "Federal district judges have jurisdiction over federal criminal cases." *Carpenter v. Goldsmith*, No. 25-10940, 2025 WL 1316479, at *3 (E.D. Mich. May 6, 2025) (citing 18 U.S.C. § 3231); *see also* 13D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3575 (3d ed. 2025) ("Thus district courts always have jurisdiction when a federal offense is charged"). "The federal indictment of [defendant] and his presence in the United States conferred personal jurisdiction in" a criminal case. *Jerdine v. United States*, No. 1:18CV1613, 2019 WL 626136, at *3 (N.D. Ohio Feb. 14, 2019); *see also United States v. Sankey*, Nos. 3:15-cr-92, 3:07-cr-83, 2016 WL 4253985, at *2 (E.D. Tenn. July 13, 2016) (Guyton, J.) ("Because the Defendant is

5

alleged to have violated a federal law, in this district, the United States District Court for the Eastern District of Tennessee unquestionably has jurisdiction over this case.").

Defendant points to the Supreme Court's 1867 decision in *Mayor and Alderman of City of Nashville v. Cooper*, 73 U.S. 247 (1867) in support of his claim that jurisdiction is lacking [Doc. 188, pp. 3–4]. In that case, the Supreme Court stated that two things are necessary to create jurisdiction: "[t]he Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it." *Mayor of Nashville*, 73 U.S. at 252. But those requirements are clearly met in the case of federal criminal prosecutions. The Constitution has given district courts the capacity to hear cases involving violations of federal law. *See* U.S. CONST. art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority"). And an act of Congress has supplied original jurisdiction to federal district courts over cases involving offenses against the laws of the United States. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States"). Accordingly, this Court has jurisdiction over this criminal matter.

Turning to the matter of venue, "[t]he Constitution provides that the venue for a criminal prosecution must be the district where the crime was committed" and the Federal Rules of Criminal Procedure codify this requirement in Rule 18. *United States v. Castaneda*, 315 F. App'x 564, 569 (6th Cir. 2009); *see* Fed. R. Crim. P. 18 ("[T]he government must prosecute an offense in a district where the offense was committed").

6

Venue for continuous crimes lies in any district where the "offense was begun, continued, or completed." *Id*. (quoting 18 U.S.C. § 3237(a)). "'Conspiracy and drug importation are continuous crimes; that is, they are not completed until the drugs reach their final destination, and venue is proper in any district along the way.'" *Id*. (quoting *United States v. Turner*, 936 F.2d 221, 226 (6th Cir. 1991)). The Sixth Circuit stated that it "reaffirm[ed] that venue in a drug conspiracy is 'proper in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed.'" *Id*. at 570 (quoting *United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001)). Indeed, when this standard is met, venue is appropriate even in a district that defendant never entered. *Crozier*, 259 F.3d at 519.

Defendant was charged in this case with a single count of conspiracy to distribute methamphetamine, heroin, and fentanyl. As is clear from the trial testimony, at least some of that conspiracy occurred in this district. At trial, coconspirator Fabiola Desrosiers testified that Derrick Williams asked her to drive "weed" to Knoxville [Doc. 152, pp. 90–91]. Williams asked her to make her first trip delivering "weed" to Knoxville, and Desrosiers met Williams in a mall parking lot, where Williams loaded a package into her trunk [*Id*. at 92–93]. Defendant was with Williams at that time, and Williams told Desrosiers that he and defendant would be following her to Knoxville [*Id*. at 93–94, 96]. Desrosiers subsequently made several other trips to deliver packages to Knoxville [*Id*. at 99].

On May 20, 2021, defendant asked Desrosiers to make another drug delivery to Knoxville [*Id*. at 106–07]. Desrosiers met defendant at an address, where he loaded a

package into her trunk [*Id*. at 107]. Defendant paid Desrosiers and gave her an address to deliver the package [*Id*. at 108]. Desrosiers then headed to Knoxville to deliver the package [*Id*.]. While driving, Desrosiers received a call from defendant asking about her estimated arrival time in Knoxville [*Id*. at 108–10]. Desrosiers called defendant again when she was near the delivery address [*Id*. at 110]. When Desrosiers arrived at the residence in Knoxville, police were waiting [*Id*. at 111]. Police found three bags of methamphetamine and one bag of what they believed to be heroin, but later identified as a fentanyl analogue,[1] in Desrosiers' car [Doc. 151, pp. 50–51 (testimony of Agent Kari Sams), 140 (testimony of Agent Jerry Orr); Doc. 153, pp. 158–59 (testimony of DEA Chemist Heather Keith), 175–78 (testimony of DEA Chemist Alan Randa); Government's Exhibits ("GE") 8-A, 8-B, 8-C, 8-D (seized drugs and drug analysis reports)].

This testimony is supported by coconspirator Derrick Williams' testimony that, as part of the drug conspiracy, he and defendant were supplying Amber Nanney (in Tennessee) with methamphetamine, fentanyl, and heroin to sell [Doc. 152, pp. 202–03]. Additionally, coconspirator Sierra McCowan testified that, as part of the conspiracy, methamphetamine, and what she believed was heroin but later learned was fentanyl, was delivered to her residence in Johnson City [Doc. 152, p. 276].

---

[1] Specifically, drug analysis confirmed that the substance contained "para-florofentanyl, phenyl hydrochloride" [Doc. 153, p. 159]. Para-flurofentanyl is a Schedule I fentanyl analogue. Jessica Bitting, Julie O'Donnell, Christine L. Mattson, Notes from the Field: Overdose Deaths Involving Para-flurorfentanyl – United States, July 2020-June 2021, Center for Disease Control Morbidity and Mortality Weekly Report (Sept. 30, 2022), available at https://www.cdc.gov/mmwr/volumes/71/wr/mm7139a3.htm

Accordingly, defendant's assertion that the fentanyl portion of the conspiracy offense happened wholly in the Northern District of Georgia [Doc. 188, p. 9] is inaccurate. At least some events relating to both the methamphetamine and fentanyl components of the conspiracy occurred in this district. As a result, defendant's arguments about the legality of search warrants issued for coconspirators and the place of coconspirators' initial appearances are irrelevant. Defendant's prosecution in this district was not based on the government seizing fentanyl in Atlanta and "arbitrarily br[inging] [it] to" this district [*See* Doc. 188, p. 2].

Defendant also appears to contend that his prosecution in this district, under Case Number 3:22-CR-106, was somehow inappropriate because the actual methamphetamine that supported the conspiracy charge was the "same methamphetamine" that supported the conspiracy charge in Case Number 3:21-CR-72, involving coconspirator Amber Nanney [Doc. 188, pp. 4–5, 8–9]. But, even accepting defendant's assertion as true that Case Numbers 3:21-CR-72 and 3:22-CR-106 charge the same conspiracy, defendant cites no authority for the proposition that every conspirator in a conspiracy must be charged in the same indictment. And there is no dispute that defendant was not charged in Case Number 3:21-CR-72, and therefore, no double jeopardy issue could arise. As a result, the Court finds no error in the R&R on this ground.

Finally, the Court addresses a few lingering assertions in defendant's objections to the R&R. First, defendant suggests that Judge McCook erred in failing to apply the "relevant statute" of "U.S.S.G. sec[.] 1B1.2(d)" [Doc. 188, p. 8]. But Section 1B1.2(d) is a provision of the United States Sentencing Guidelines that explains the general application

9

of those guidelines, *see* U.S. SENT'G GUIDELINES MANUAL § 1B1.2(d) (U.S. SENT'G COMM'N 2024), and is not applicable with regard to a motion to dismiss. There was no error in failing to consider any provision of the Sentencing Guidelines with respect to the instant motions.

Second, defendant contends that citation to Sixth Circuit law is improper because it is not "clearly established federal law" [Doc. 188, p. 11 (citing *Parker v. Matthews*, 567 U.S. 37 (2012)]. But "[a]bsent a clear directive from the Supreme Court, this Court is bound by Sixth Circuit precedent." *United States v. Gleaves*, 654 F. Supp. 3d 646, 650–51 (M.D. Tenn. 2023). And the case defendant cites for the proposition that "circuit precedent does not constitute 'clearly established Federal law . . .'" is limited to the context of whether a petitioner established that a state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," as required for a petition under 28 U.S.C. § 2254(d). *Parker*, 567 U.S. at 40, 48–49. That statute is inapplicable here. Accordingly, the R&R, and this memorandum opinion and order, appropriately rely on Sixth Circuit precedent.

Third, in the middle of his objections to the R&R's conclusions on jurisdiction and venue, defendant asserts "[t]he act of Congress used 21 U.S.C. [§] 846 was unconstitutional as applied" [Doc. 188, p. 4]. But defendant promptly returns to arguments relating to jurisdiction and venue and provides no further detail on how or why § 846 was unconstitutional as applied in this case [*See id*.]. And "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way,

10

leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal quotation marks omitted).  Defendant has not provided sufficient argument for the Court to address this issue, and the Court treats it as waived.

One final note: although in no way dispositive to any of the issues addressed in the R&R, throughout his motions and his objections to the R&R, defendant repeatedly alleges that Rule 5(a) of the Federal Rules of Criminal Procedure was violated because coconspirators Ariel Clayton and LaTeasha Brown were arrested in Atlanta and transported to this district for their initial appearance/arraignment hearings [*See e.g.*, Doc. 188, pp. 2–3].  Under Rule 5(a)(1)(A), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ."  Fed. R. Crim. P. 5(a)(1)(A).  Defendant appears to contend that this rule was violated because Clayton and Brown were transported to this district for their initial appearances before a magistrate judge, rather than being taken before a magistrate judge in the Northern District of Georgia, where they were arrested.

"No hard and fast rule can govern . . . what constitutes unnecessary delay and each case must be determined based on its own facts and circumstances."  *United States v. Williams*, No. 3:21-cr-153, 2022 WL 1427643 (W.D. Ky. May 5, 2022).  The record reflects that Clayton was arrested on December 21, 2021, and appeared for an initial appearance before Magistrate Judge Poplin, in this district, at 3:50 p.m. that same day [Case No. 3:22-CR-11, Doc. 4 (Minute Entry for Initial Appearance on Complaint as to Clayton)].  Similarly, Brown was arrested on December 22, 2021, and appeared for an initial appearance before Magistrate Judge Poplin in this district at 11:00 a.m. that same

day [Case No. 3:22-CR-11, Doc. 4 (Minute Entry for Initial Appearance on Complaint as to Brown)].  Although the Court does not have the specific times that Clayton and Brown were arrested before it, given that their initial appearances occurred the same day as their arrests, it appears that they were promptly transported to this district for their initial appearances, and no unnecessary delay occurred.  Nothing in this rule requires a defendant to be immediately taken to the nearest magistrate judge, as defendant suggest, but rather, that no "unnecessary delay" occur.  The Court finds no such delay occurred with regard to Clayton or Brown.

Moreover, even if a violation of Rule 5(a) occurred, the remedy is suppression of statements obtained from the accused prior to their appearance before a magistrate judge. *United States v. Barlow*, 693 F.2d 954, 958 (6th Cir. 1982).  But there is no allegation that Clayton or Brown made any statements between the time of their arrest and their initial appearances before Judge Poplin that were later used against this defendant.  Instead, defendant broadly seeks to have his entire case dismissed, or all evidence relating to these coconspirators suppressed, based on this alleged violation.  But those requests for relief have no foundation in law, and therefore, even if a violation of Rule 5(a) occurred, defendant's requested relief would still be denied.

For all of these reasons, defendant's objections to the R&R's conclusions regarding jurisdiction and venue are **OVERRULED**.

### C.     Double Jeopardy

Judge McCook summarized defendant's double jeopardy arguments as follows:

> Defendant argues a violation of the prohibition against double jeopardy occurred when he was charged in the Superseding Indictment in this case because he was already charged for the same offense in case number 3:22-CR-11 [Doc. 135 pp. 3–4; Doc. 141 pp. 1–4]. He argues that he was thus subjected to multiple prosecutions and his liberty was twice restrained for the same offense [Doc. 135 pp. 16–17].

[Doc. 177, p. 15].

Judge McCook found that, at the time defendant was charged in the Superseding Indictment in this case, the Court did not have the power to determine his guilt or innocence in either case, and therefore, jeopardy did not attach, even though defendant was charged in two indictments for the same offense [*Id.* at 16]. Moreover, Judge McCook stated that the undersigned's dismissal of the indictment against defendant in Case Number 3:22-CR-11 did not constitute jeopardy [*Id.*]. Rather, it was only when the jury was empaneled in this case that jeopardy attached, and, by that time, the indictment against defendant in Case Number 3:22-cr-11 has been dismissed [*Id.*].

Defendant first asserts that Judge McCook failed to consider that he had two pending indictments involving the same conduct [Doc. 188, pp. 11–12]. But Judge McCook clearly considered these facts in the R&R; she simply reached a different conclusion about whether such facts constituted a violation of the Double Jeopardy Clause [Doc. 177, pp. 15–16]. Judge McCook concluded that these facts were not a double jeopardy violation because jeopardy had not attached in either case while both indictments were pending [*Id.* at 16].

Defendant also objects to the conclusion that jeopardy had not attached [Doc. 188, p. 2]. He argues that Judge McCook failed to consider the "risk" that he "absolutely endured" in evaluating whether jeopardy had attached [*Id*. at 14].

Pursuant to the Double Jeopardy Clause, "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant many neither be tried nor punished a second time for the same offense." *Soto v. Siefker*, 79 F.4th 715, 718 (6th Cir. 2023) (quoting *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003)). "A defendant is 'placed in jeopardy' for a charge when jeopardy 'attaches' to that charge." *Id.* (quoting *Crist v. Bretz*, 437 U.S. 28, 32–33 (1978)). "Historically, jeopardy attached only 'to charges on which a jury had rendered a verdict.' That was the English common-law practice[.]" *Id.* (quoting *Smith v. Massachusetts*, 543 U.S. 462, 466 (2005)) (internal citation omitted). "The Double Jeopardy Clause sought to carry this traditional common law rule into our Constitution," but the Supreme Court later modified the rule, by moving forward the point at which jeopardy attaches at trial. *Id.* at 718–19 (internal quotation marks and alterations omitted). Now, jeopardy attaches in a jury trial as soon as a jury is empaneled and sworn or in a bench trial when a judge begins to receive evidence. *Id.* at 719; *see also United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977).

Although defendant alleges that he "endured" a "risk as a result of being charged in a second indictment [Doc. 188, p. 14], defendant fails to acknowledge the well-established rule that, in the case of a jury trial, jeopardy does not attach until the jury is empaneled and sworn. *See Crist*, 437 U.S. at 37–38 (describing the rule that jeopardy attaches when a jury is empaneled and sworn as "a settled part of federal constitutional law"). Nor does

14

defendant identify any case law in which jeopardy was deemed to have attached at an earlier stage in the proceeding.

Defendant does cite the Supreme Court's decision in *Gavieres v. United States*, 220 U.S. 338 (1911) [Doc. 188, p. 13]. However, "[j]eopardy questions . . . are a matter of both timing and substance—that is, they require answering whether jeopardy has attached and whether two crimes constitute the 'same offense.'" *United States v. Thomas*, 142 F.4th 412, 420 (6th Cir. 2025). *Gavieres* only addressed the substance question, that is, whether the charges involved constituted the "same offense." *Gavieres*, 220 U.S. at 341–45. But Judge McCook's R&R was based on the timing question—when jeopardy attached—not the substance question [Doc. 177, pp. 15–16]. Therefore, *Gavieres* provides no guidance.

Defendant also cites the Supreme Court's decision in *Breed v. Jones*, 421 U.S. 519 (1975) [Doc. 188, p. 15]. But that case also provides no support for defendant's arguments. The Supreme Court in *Breed* held that the Double Jeopardy Clause applies to juvenile adjudicatory proceedings. 421 U.S. at 531. The Court also rejected an argument that trial of a defendant in criminal court based on the same offense for which he had been tried in juvenile court could not constitute a double jeopardy violation. *Id*. at 532. In so holding, the Supreme Court noted the "policy of avoiding *multiple trials*" and concluded that the defendant was "subjected to the burden of *two trials* for the same offense." *Id*. at 533 (emphasis added). But here, there was no issue of defendant being subjected to multiple *trials*, as the government moved to dismiss the first indictment against defendant shortly after superseding the indictment in this case to add defendant [*See* Doc. 14 (first superseding indictment filed May 17, 2023); Case No. 3:22-CR-11, Doc. 295 (motion to

15

dismiss filed June 7, 2023)]. Moreover, the *Breed* Court seemed to imply that double jeopardy issues could be avoided if the decision of whether to transfer a case from juvenile court to criminal court was made prior to the adjudicatory hearing in juvenile court. *Id*. at 535–36. A similar occurrence happened here: the government chose to supersede the indictment in this case to add defendant before any trial in Case Number 3:22-CR-11. Thus, *Breed* does not support a finding of a double jeopardy violation in this case.

Next, defendant cites *Ex parte Lange*, 85 U.S. 163 (1873) [Doc. 188, p. 14]. In this case, the Supreme Court first considered application of the Double Jeopardy Clause to sentencing. *Wilson v. State*, 170 P.3d 975, 977 (Nev. 2007) (citing *Lange*, 85 U.S. at 163). Specifically, the defendant in *Lange* was convicted of stealing federal mail bags, a crime punishable by either a fine *or* a prison term, but he was *both* fined and sentenced to prison. *Id*. (citing *Lange*, 85 U.S. at 176). The Supreme Court reversed. *Id*. (citing *Lange*, 85 U.S. at 176). But the Supreme Court subsequently overruled *Lange*. *Id*. at 980 (citing *United States v. DiFrancesco*, 449 U.S. 117 (1980)). Because *Lange* is no longer good law, it does not support defendant's claim of a double jeopardy violation.

Finally, defendant cites to *Ashe v. Swenson*, 397 U.S. 436, 457 (1970) for the proposition that "[i]f in civil cases, the law abhors a multiplicity of suits, it is yet more watchful in criminal cases, that the crown shall not oppress the subject, or the government the citizen, by unnecessary prosecutions" [Doc. 188, p. 15]. But even assuming that this quotation provided some support for defendant's argument of a double jeopardy violation in this case, which it does not, the Court notes that it is taken from Justice Brennan's concurrence in the *Ashe* case. *See Ashe*, 397 U.S. at 457 (Brennan, J., concurring). And

16

"concurring and dissenting opinions . . . are not binding authority." *United States v. Williams*, 718 F. Supp. 3d 651, 660 n.9 (E.D. Mich. 2024) (collecting cases). Moreover, the facts of *Ashe* are highly divergent from those in this case. There, the defendant proceeded to a jury trial and was found "not guilty due to insufficient evidence." *Ashe*, 397 U.S. at 439. Subsequently, he was tried again and found guilty. *Id*. at 339–40. The Supreme Court found that such violated the Double Jeopardy Clause. *Id*. at 445. But nothing in the rationale for that conclusion provides any support for defendant's assertion that a double jeopardy violation occurred in this case, when he was not subjected to a trial under the first indictment.

Defendant also appears to assert that the dismissal of the indictment against him in Case Number 3:22-CR-11 was comparable to a mistrial for jeopardy purposes [Doc. 188, p. 15]. But the indictment in Case Number 3:22-CR-11 was dismissed without prejudice under Rule 48(a) [Case No. 3:22-CR-11, Doc. 316]. And "[t]he primary purpose of Rule 48(a) is the protection of the defendant's rights . . . to prevent harassment of a defendant by charging, dismissing, and re-charging *without placing a defendant in jeopardy*." *United States v. Stapleton*, 297 F. App'x 413, 431 (6th Cir. 2008) (internal quotation marks omitted) (emphasis added). Accordingly, the dismissal under Rule 48(a) did not constitute jeopardy.

Defendant next asserts that, rather than superseding the indictment in this case to add him as a defendant, the government should have joined the charges or the indictments under Federal Rules of Criminal Procedure 8(a) or 13 [Doc. 188, pp. 12–13]. Rule 8(a) states that:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). But this rule is irrelevant to the facts raised by defendant, as the rule relates only to when it is proper to join multiple charges against a defendant in one indictment. *See id.* Defendant provides no explanation as to how this would have applied in the context of this case, where he had been indicted in one case number, and the government sought to add him to a separate indictment involving the same overall conspiracy but dismiss him from the first indictment. Regardless, the plain language of Rule 8(a) is permissive, not mandatory: "[t]he indictment or information *may* charge a defendant in separate counts with 2 or more offenses. . . ." Fed. R. Crim. P. 8(a) (emphasis added); *see Lopeso Industria de Subproductos Animais, Ltda v. Free Range Dog Chews, Inc.*, No. 10-CV-10970, 2010 WL 3790179, at *2 (E.D. Mich. Sept. 22, 2010) (classifying language using the term "may" as "clearly permissive"); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 112 (1st ed. 2012) ("The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive" (emphasis in original)).

Rule 13, titled "Joint Trial of Separate Cases," states "[t]he court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." Fed. R. Crim. P. 13. As with Rule 8(a), it is unclear how Rule 13 would have impacted the charging decisions in this case, as Rule 13 only relates to the trial of

18

separate cases. As best the Court can determine, defendant is suggesting that, rather than dismissing him from Case Number 3:22-CR-11 and superseding the indictment to add him as a defendant in this case number, the government should have left him on the indictment in Case Number 3:22-CR-11, and joined the trials of himself under that case number (3:22-CR-11) and Shelby Glover under this case number (3:22-CR-106). Even assuming the government could have proceeded with this course of action, again, the language of Rule 13 is permissive, not mandatory: "[t]he court *may* order that separate cases be tried together as though brought in a single indictment . . . ." Fed. R. Crim. P. 13 (emphasis added); *see Lopeso Industria de Subproductos Animais*, 2010 WL 3790179, at *2 (classifying language using the term "may" as "clearly permissive"); *see also* SCALIA & GARNER, *supra*, at 112 ("The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive" (emphasis in original)). In other words, the government was not required to join any charges or trials under Rules 8(a) or 13, and, even if the government could have proceeded under an alternate procedure under these rules, such does not indicate that a double jeopardy violation (or any other constitutional violation) occurred because the government elected to follow a different procedure.

Finally, defendant raises several arguments regarding alleged prosecutorial harassment and impact on his trial date in his objections to the double jeopardy portion of the R&R [*See* Doc. 188, pp. 13–14]. But the Court finds that those arguments are more relevant to defendant's objections to the speedy trial and prosecutorial harassment sections of the R&R, and the Court will thus address those arguments in that context later in this memorandum opinion and order.

19

For all of these reasons, defendant's objections to the R&R's conclusions regarding double jeopardy are **OVERRULED**.

### D.  Speedy Trial

Judge McCook summarized defendant's speedy trial arguments as follows:

> Defendant asserts that his speedy trial rights were infringed because at the time he was indicted in the Superseding Indictment, his trial date in case number 3:22-CR-11 was June 20, 2023, and the trial date in this case was July 18, 2023 [Doc. 135 p. 11].  He argues that when he was charged in this case, he lost the June 20, 2023 trial date, which the District Judge ordered would not be extended absent exceptional circumstances [*Id*.].  Defendant contends that the Government's filing of a motion to dismiss in case number 3:22-CR-11 does not toll the speedy trial clock [*Id*. at 13] and, instead, amounts to an effort to avoid the June 20, 2023 trial date in bad faith [Doc. 141 p. 7].  He also argues that the delay of his June 20, 2023 trial date violated his Sixth Amendment right to a speedy trial [Doc. 135 pp. 4, 6], asserting the delay was caused by the Government's bad faith [Doc. 141 p. 7], that he asserted his right to a speedy trial by requesting a detention hearing in both cases [Doc. 135 p. 14; Doc. 141 p. 5], and that he was prejudiced by the delay [Doc. 135 p. 4].

[Doc. 177, p. 17].

In addressing this issue, Judge McCook reviewed the history of continuances in 3:22-CR-11 and this case and concluded that "Defendant requested or caused every trial continuance in both cases" [*Id*. at 20].  And to the extent that some amount of time was added to defendant's trial date based on adding defendant to the superseding indictment in this case, defendant, through counsel, expressed that he had no objection to the dismissal from Case Number 3:22-CR-11, and raised no objection to the July 18, 2023, trial date, which was already set in this case at his arraignment but rather, asked that that date be continued [*Id*.].

Turning to the *Barker*[2] factors, Judge McCook concluded that, while defendant's trial was significantly delayed, his constitutional right to a speedy trial was not compromised [*Id.* at 21]. Regarding the second factor, reason for delay, Judge McCook again noted that defendant caused the delay by repeatedly asking for continuances to prepare, engage in plea negotiations, and accommodate family emergencies for his defense counsel and associate [*Id.*]. As to the third factor, Judge McCook noted that defendant's requests for pretrial release were followed by numerous motions to continue the trial, and he raised no express assertion of his right to a speedy trial until after the trial occurred, and therefore, "his invocation of his right to a speedy trial was tepid" [*Id.* at 22]. As to the fourth factor, prejudice, Judge McCook concluded that defendant had shown no prejudice to his defense from the delay in the trial, particularly given that defendant caused the delay and only weakly asserted his right to a speedy trial [*Id.* at 23].

As to defendant's claim of a violation of his statutory right to a speedy trial, Judge McCook concluded that, because defendant first moved for dismissal of the Superseding Indictment on speedy trial grounds after his trial and conviction, he waived relief under the Speedy Trial Act [*Id.*].

Preliminarily, based on defendant's objections to the R&R, it appears some clarification of the grounds for speedy trial claims may be helpful. The R&R construed defendant's motions to dismiss as raising claims under both the Speedy Trial Act and the Sixth Amendment right to a speedy trial [Doc. 177, pp. 16–17]. The Sixth Amendment

---

[2] *Barker v. Wingo*, 407 U.S. 514 (1972).

states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend. VI. The Speedy Trial Act requires a district court to dismiss charges unless a defendant's trial begins within 70 days of the filing of the indictment or the defendant's arraignment, whichever is earlier, although this 70-day limitation is subject to certain excludable periods. *United States v. Sutton*, 862 F.3d 547, 554 (6th Cir. 2017) (citing 18 U.S.C. § 3161(c)(1), (h)). "Although the passage of the Speedy Trial Act was in part an attempt by Congress to quantify the sixth amendment right to a speedy trial, the legislation does not purport to be coextensive with that amendment." *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000) (internal quotation marks and alterations omitted) (quoting *United States v. Gonzalez*, 671 F.2d 441, 443 (11th Cir. 1982)). As a result, federal courts typically review Sixth Amendment and Speedy Trial Act challenges independently of one another. *United States v. Johnson*, 990 F.3d 661, 666 (8th Cir. 2021). Nonetheless, the Sixth Circuit has stated that "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated." *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001) (quoting *United States v. DeJesus*, 887 F.2d 114, 116 (6th Cir. 1989).

### 1. History of Continuances

Before delving into defendant's objections, the Court finds that a summary of the history of continuances in this case, and Case Number 3:22-CR-11, is warranted. The initial indictment in Case Number 3:22-CR-11 was filed on February 16, 2022 [Case No. 3:22-CR-11, Doc. 3]. Defendant appeared for an initial appearance and arraignment before

United States Magistrate Judge Debra C. Poplin on February 22, 2022, and a trial was scheduled for April 26, 2022 [*Id.*, Doc. 19].

On March 25, 2022, counsel for the government and defense attorneys Mohammed Nasser and Jeremy Bowie jointly filed a "Stipulation to Continue," asking for a continuance of the trial date by approximately 60 days and stating that the requested continuance would be excludable under the Speedy Trial Act under the ends-of-justice provision [*Id.*, Docs. 97, 98]. The parties specifically cited the impact of the COVID-19 pandemic on the parties' negotiations, trial preparation, and discovery [*Id.*]. On April 14, 2022, Judge Poplin conducted a motion hearing on the pending request to continue [*Id.*, Doc. 119]. On April 20, 2022, Judge Poplin entered a memorandum and order granting the continuance and resetting the trial for November 29, 2022 [*Id.*, Doc. 120].[3] Judge Poplin noted that, at the motion hearing, defendant's counsel stated that he did not object to continuing the trial beyond the 60 days stipulated to in his filing [*Id.* at 3–4].[4] In granting the continuance, Judge Poplin made these specific findings:

> The Court finds the motions to continue the trial are unopposed and well-taken. The Court also finds that the ends of justice served by granting a continuance outweigh the interest of the defendants and the public in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). The Court finds a trial continuance is necessary to permit defense counsel additional time to review the voluminous discovery, to confer with their respective clients regarding defense strategy, and to otherwise prepare the case for trial. The Court finds

---

[3] At this juncture, multiple codefendants were pending in Case Number 3:22-CR-11, and Judge Poplin addressed the motions to continue filed by all, including this defendant [Case No. 3:22-CR-11, Doc. 120].

[4] Judge Poplin also noted that defendant's stipulation for a continuance contained several inaccuracies, including that defendant was charged with possession of a firearm and that the Court had been closed as a result of the COVID-19 pandemic [Case No. 3:22-CR-11, Doc. 120, p. 3 n.2].

> that all of this cannot occur before the April 26, 2022, trial date, especially as to the defendants who only recently entered the case. Accordingly, the Court finds that a trial continuance is warranted for counsel to have the reasonable time necessary to prepare for trial despite their use of due diligence, and that the failure to grant a continuance would likely cause a miscarriage of justice. *See* 18 U.S.C. §§ 3161(h)(7)(B)(i) & (iv).

[*Id.* at 4]. Judge Poplin found that all time between the filing of the first codefendant's motion to continue on March 24, 2022, and the new trial date of November 29, 2022, was fully excludable under the Speedy Trial Act [*Id.*].

On October 26, 2022, Attorney Nasser filed a Motion to Continue Plea Agreement Deadline, Motion Deadline, and Trial [*Id.*, Doc. 169]. Attorney Nasser stated that he had received new discovery from the government and needed time to review it with defendant and file any appropriate motions [*Id.*]. The government filed a response in opposition to the continuance motion [*Id.*, Doc. 181]. The government stated that defendant's motion misrepresented that the parties were in negotiations, but rather, the plea offer provided to the defendant was rescinded on October 25, 2022, and the government informed Attorney Nasser that the government opposed any continuances [*Id.*].

On November 15, 2022, Judge Poplin held a hearing to address the motion to continue (and a separate defense motion) [*Id.*, Docs. 197, 199]. Defendant appeared at that hearing without counsel because Attorney Bowie contacted Judge Poplin's chambers shortly before the start of the hearing to request a continuance of the hearing, so that he could attend a meeting, but the other parties were already in the courtroom for the hearing, and therefore, the request could not be accommodated [*Id.*, Doc. 202, p. 1 n.2]. Attorney Bowie was therefore not present for the motion hearing [*Id.*]. At the hearing, the

24

government amended its position to state that it did not oppose a brief trial continuance to allow defendant to communicate with his attorneys [*Id.* at 3]. Judge Poplin made the following findings:

> The Court finds Defendant Davis's motion to continue the trial is no longer opposed by the Government and is not opposed by Defendant Brown. The Court also finds that the ends of justice served by granting a continuance outweigh the interest of the Defendants and the public in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). The Court finds a trial continuance is necessary to allow defense counsel time to meet with Defendant Davis and to prepare the case for trial. The Court also finds that counsel for the Government begins lengthy criminal trial on January 10 and, thus, is not available for trial in mid-January 2023. Accordingly, the Court resets the trial to January 31, 2023. The Court finds a continuance to this date is warranted to give counsel for Defendant Davis the reasonable time necessary to prepare for trial, even proceeding with due diligence, and to preserve the continuity of counsel for the Government. *See* 18 U.S.C. § 3161(h)(7)(B)(iv).

[*Id.* at 3–4]. Judge Poplin thus found that all time between the filing of the motion to continue on October 26, 2022, and the new trial date of January 31, 2023, was fully excludable under the Speedy Trial Act [*Id.* at 4].

On December 27, 2022, Attorney Nasser filed a motion to continue the plea deadline, seeking additional time for plea negotiations with the government [*Id.*, Doc. 230]. Judge Poplin granted that motion, permitting defendant until January 9, 2023, to file a plea agreement [*Id.*, Doc. 232].

On January 6, 2023, Attorney Nasser filed a motion to continue, seeking a continuance of both the plea deadline and the trial based on "a scheduling conflict that has suddenly arisen for Defense counsel on the current plea cutoff date," as well as ongoing plea negotiations [*Id.*, Doc. 241]. The undersigned denied this motion with leave to refile, noting that Attorney Nasser did not mention whether defendant was aware of the request

25

and its impact on his Speedy Trial Act rights, which the Court deemed necessary to determine whether the ends of justice served by continuing the trial outweighed the best interest of the public and the defendant in a speedy trial [*Id.*, Doc. 242].  On January 12, 2023, Attorney Nasser filed a revised motion to continue, in which he stated "Defense counsel has spoken with Defendant about the continuance and his speedy trial right, and Defendant has agreed with the continuance of the dates" [*Id.*, Doc. 245, p. 1].  The undersigned then granted the motion to continue, making the following findings:

> Upon consideration of this motion, it appears to the Court that defendant requires additional time to prepare adequately for trial, taking into account the exercise of due diligence by the parties.  18 U.S.C. § 3161(h)(7)(B)(iv).  The Court thus finds that a failure to continue the case would likely result in a miscarriage of justice.  § 3161(h)(7)(B)(i).  Accordingly, the Court finds that the ends of justice served by granting such a continuance outweigh the best interests of the public and defendant in a speedy trial.  § 3161(h)(7)(A).

[*Id.*, Doc. 246, p. 1].  The Court reset the trial for April 25, 2023, and specifically found that the period of time between the filing of defendant's motion [Doc. 245] and the new trial date was fully excludable under the Speedy Trial Act [*Id.* at 2].

On March 20, 2023, Attorney Nasser filed an unopposed motion to continue the plea deadline and trial date due to a "family medical emergency" for Attorney Nasser [*Id.*, Doc. 270].  Specifically, Attorney Nasser stated that his mother had been hospitalized for late-stage brain cancer [*Id.*].  Attorney Nasser represented that he had spoken with defendant about the continuance and his speedy trial rights, and defendant agreed with the proposed continuance [*Id.*].  The Court granted the motion, stating:

> Upon consideration of this motion, it appears to the Court that defendant requires additional time to prepare adequately for trial, taking into account the exercise of due diligence by the parties.  18 U.S.C. § 3161(h)(7)(B)(iv).

26

> The Court thus finds that a failure to continue the case would likely result in a miscarriage of justice. § 3161(h)(7)(B)(i). Accordingly, the Court finds that the ends of justice served by granting such a continuance outweigh the best interests of the public and defendant in a speedy trial. § 3161(h)(7)(A).

[*Id.*, Doc. 273, p. 1]. The Court reset the trial for May 16, 2023, and specifically found that the period of time between the filing of defendant's motion [Doc. 270] and the new trial date was fully excludable under the Speedy Trial Act [*Id.* at 1–2]. However, the Court provided the following admonition: "**The Court cautions that, absent extraordinary circumstances, it will grant no further extensions or continuances in this case. Unexplained delays in contacting opposing counsel or the defendant will not be deemed "extraordinary circumstances**" [*Id.* at 2 (emphasis in original)].

On April 10, 2023, Attorney Nasser filed another unopposed motion to continue, stating that his mother had recently passed away from brain cancer and he needed time to prepare for the funeral [*Id.*, Doc. 278]. Attorney Nasser represented that he had spoken with defendant about the continuance and his speedy trial rights, and defendant agreed with the proposed continuance [*Id.*]. The Court granted the motion, stating:

> Upon consideration of this motion, it appears to the Court that defendant requires additional time to prepare adequately for trial, taking into account the exercise of due diligence by the parties. 18 U.S.C. § 3161(h)(7)(B)(iv). The Court thus finds that a failure to continue the case would likely result in a miscarriage of justice. § 3161(h)(7)(B)(i). Accordingly, the Court finds that the ends of justice served by granting such a continuance outweigh the best interests of the public and defendant in a speedy trial. § 3161(h)(7)(A).

[*Id.*, Doc. 281, p. 1]. The Court reset the trial for June 20, 2023, and specifically found that the period of time between the filing of defendant's motion [Doc. 278] and the new trial date was fully excludable under the Speedy Trial Act [*Id.* at 2]. The Court stated that "[t]his

27

being the sixth time the Court has granted defendant a continuance of his trial date, the Court will not likely grant any further continuances" [*Id*.].

On May 17, 2023, the government superseded the indictment in Case Number 3:22-CR-106, which charged Shelby Glover with the same conspiracy as alleged in Case Number 3:22-CR-11, to add defendant to that indictment [Doc. 14]. Defendant appeared for an initial appearance and arraignment before Judge McCook on June 7, 2023 [Doc. 18]. On the same day, the government filed a motion to dismiss the indictment against defendant in Case Number 3:22-CR-11 without prejudice [Case No. 3:22-CR-11, Doc. 295]. The government stated that it had conferred with defense counsel and could represent that defendant did not object to the motion [*Id*.].[5]

At the time of defendant's initial appearance and arraignment in this case, a jury trial was already scheduled for July 18, 2023 [Doc. 18]. On June 16, 2023, Attorney Nasser filed a motion to continue the July 18, 2023, trial [Doc. 25]. In support, Attorney Nasser asserted that further time was needed for plea negotiations and potential pretrial motions [*Id*. at 1]. Attorney Nasser represented that he had spoken with defendant about the continuance and his speedy trial rights, and defendant agreed with the proposed continuance [*Id*.]. The government responded that, while it did not oppose the request, it asked that any continuance be limited to no more than 60 days [Doc. 31].[6] Judge McCook

---

[5] On August 2, 2023, after allowing time for defendant to file any response to the motion, and after no response was submitted, the Court granted the motion to dismiss without prejudice [Case No. 3:22-CR-11, Doc. 316].

[6] Subsequently, due to unavailability of counsel for codefendant Glover on the available trial dates in a 60-day window, the government advised Judge McCook's chambers that it would not oppose a continuance of greater than 60 days [Doc. 33, p. 2 n.1].

granted the continuance [Doc. 33]. In so doing, Judge McCook made the following findings:

> Based upon the information in Defendant Davis's motion and because Defendant Glover and the Government do not oppose the requested continuance, the Court finds the ends of justice served by granting a continuance outweigh the interests of Defendants and the public in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A). In making this determination, the Court has considered the facts set forth in 18 U.S.C. § 3161(h)(7)(B). Specifically, the Court concludes that not granting a continuance would result in a miscarriage of justice and deny counsel for Defendant Davis the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. *See id*. § 3161(h)(7)(B)(i)–(iv). Counsel for Defendant Davis needs additional time to confer with his client and determine whether any pretrial motions are necessary in light of the superseding indictment. Counsel also needs additional time to engage in plea negotiations and prepare for trial if negotiations are not fruitful. All of this cannot be done by the July 18, 2023 trial date.

[*Id*. at 2]. Judge McCook reset the trial date for October 31, 2023, and found that all of the time between the filing of the motion on June 16, 2023, and the new trial date was fully excludable under the Speedy Trial Act [*Id*.].

On October 2, 2023, Attorney Nasser and Assistant United States Attorney ("AUSA") Kevin Quencer jointly filed a motion to continue the trial [Doc. 41]. The parties represented that AUSA Quencer was new to the case, after the departure of a colleague from the United States' Attorney's Office, and additional time was needed for AUSA Quencer to negotiate a new potential plea offer with defense counsel [*Id*. at 1]. A few days later, Attorney Nasser filed a "response" to the joint motion, adding the following:

> Counsel has spoken with Mr. Davis and he understands his speedy trial rights. He understands that by not objecting to the continuance he is constructively accepting that for the purposes of the Speedy Trial Act, the time between the filing of the motion and the future trial date will be

29

excluded.  Mr. Davis is in custody but will not be prejudiced by a continuance in this matter.

[Doc. 44].[7]  Judge McCook granted the continuance [Doc. 45].  In so doing, Judge McCook made the following findings:

> Based upon the parties' positions and the information in the record, the Court finds the ends of justice served by granting a continuance outweigh the interests of Defendants and the public in a speedy trial.  *See* 18 U.S.C. § 3161(h)(7)(A).  In making this determination, the Court has considered the facts set forth in 18 U.S.C. § 3161(h)(7)(B).  Specifically, the Court concludes that not granting a continuance would result in a miscarriage of justice and deny counsel for Defendant Davis the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.  *See id*. § 3161(h)(7)(B)(i)–(iv).  Counsel for Defendant Davis and the Government need additional time to engage in plea negotiations and prepare for trial if negotiations are not fruitful.  All of this cannot be done by the October 31, 2023 trial date.

[*Id*. at 2].  Judge McCook reset the trial date for March 26, 2024, and found that all of the time between the filing of the motion on October 2, 2023, and the new trial date was fully excludable under the Speedy Trial Act [*Id*.].

On February 9, 2024, Attorney Nasser filed another motion to continue [Docs. 47, 48].  Attorney Nasser again cited further plea negations and possible pretrial motions, as well as other criminal matters he was handling in other courts [*Id*.].  Attorney Nasser represented that he had spoken with defendant about the continuance and his speedy trial rights, and defendant agreed with the proposed continuance [*Id*.].  Judge McCook granted the continuance [Doc. 49].  In so doing, Judge McCook made the following findings:

---

[7]  Notably, this language seems to contain some inaccuracies as defendant did more than "not object[]" to the continuance, but rather, was a joint movant with the government [*See* Doc. 41].

Based upon the information in Defendant Davis's motion and that the Government and the Codefendant Glover have no objection to a continuance, the Court finds the ends of justice served by granting a continuance outweigh the interests of Defendants and the public in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A). In making this determination, the Court has considered the facts set forth in 18 U.S.C. § 3161(h)(7)(B). Specifically, the Court concludes that not granting a continuance would result in a miscarriage of justice and deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. *See id.* § 3161(h)(7)(B)(i)–(iv). Counsel for Defendant Davis needs additional time to engage in plea negotiations and prepare for trial if negotiations are not fruitful. All of this cannot be done by the March 26, 2024 trial date.

[*Id.* at 2]. Judge McCook reset the trial date for May 7, 2024, and found that all of the time between the filing of the motion on February 9, 2024, and the new trial date was fully excludable under the Speedy Trial Act [*Id.*].

On March 1, 2024, Attorney Nasser filed yet another motion to continue [Doc. 51]. Attorney Nasser again cited further plea negations and possible pretrial motions, as well as other criminal matters he was handling in other courts [*Id.*]. Particularly, Attorney Nasser cited a case in the District of Hawaii set to begin April 8, 2024, and last "3-4 weeks" [*Id.*]. Attorney Nasser represented that he had spoken with defendant about the continuance and his speedy trial rights, and defendant agreed with the proposed continuance [*Id.*].

The undersigned granted this motion to continue, albeit reluctantly [Doc. 53]. The Court provided an exhaustive history of the repeated trial continuances requested by Attorney Nasser in this case, as well as Case Number 3:22-CR-11 [*Id.* at 1–4]. The Court stated the following:

By the Court's calculation, during the pendency of charges based on this conspiracy, defense counsel (either jointly with the government, or solely) has filed 10 motions to continue the trial of this case. This conduct appears to be part of a pattern for counsel Nasser. The Court notes that, on February

31

21, 2024, counsel Nasser moved in the District of Hawaii to have his client's criminal trial continued from April 8, 2024 [Dist. of Haw., Case No. 1:21-cr-101, Doc. 396]. That court denied the request, noting several issues, but stating that the "case has been pending for two-and-a-half years, with [defendant] in custody the entire time. So, Mr. Nasser will *finally* make this case a priority on his calendar" [*Id*., Doc. 397 (emphasis in original)].

As in that case, this defendant has been facing charges related to the same conspiracy for over two years and has remained in custody during this time. Defense counsel has had ample time to discuss a potential plea agreement and prepare for trial in this case. Nevertheless, noting that the defendant in the District of Hawaii has been pending since 2021, the Court will grant a brief continuance to allow counsel Nasser to complete the trial in that case before the instant trial commences.

Thus, the Court [] finds that a failure to continue this case would likely result in a miscarriage of justice. § 3161(h)(7)(B)(i). Accordingly, the Court finds that the ends of justice served by granting such a continuance outweigh the best interests of the public and defendant in a speedy trial. § 3161(h)(7)(A).

[*Id*. at 4–5]. The Court continued the trial to May 14, 2024, and found that the period of time between the filing of defendant's motion [Doc. 51] and the new trial date was fully excludable under the Speedy Trial Act [*Id*. at 5]. The Court also stated:

*The trial of this matter will not be continued again absent extraordinary circumstances*. To ensure that the trial remains on schedule, counsel Nasser is hereby **ORDERED** to file a status report with the Court no later than **Monday, April 29, 2024**, advising the Court of the progress of the trial in the District of Hawaii.

[*Id*. at 5 (emphasis in original)].

Nonetheless, on April 17, 2024, Attorney Nasser filed yet another motion to continue [Doc. 56]. Attorney Nasser asserted that new circumstances presented a scheduling conflict, namely, that Attorney Edward Martell, who was "assisting" Attorney Nasser, was "seeking to head the funeral service of his father, which is scheduled for Thursday, April 18, 2024," and Attorney Martell's grandmother also passed away on April

32

12, 2024, and her "service is to be scheduled forthwith" [*Id*. at 1–2]. Attorney Nasser represented that he had spoken with defendant about the continuance and his speedy trial rights, and defendant agreed with the proposed continuance [*Id*. at 2].

The undersigned denied the requested continuance [Doc. 57]. The Court noted that it had cautioned the parties on at least three occasions that the Court was unlikely to grant additional extensions [*Id*. at 1–2]. The Court summarized its most recent grant of a continuance to accommodate a trial in the District of Hawaii, and noted that, from the record in that court, it appeared that no trial ever occurred in the District of Hawaii, but rather, Attorney Nasser contacted that court the day before the scheduled trial to advise that his client would enter a guilty plea [*Id*. at 2–3]. The Court noted that Attorney Nasser thus had "an additional three to four weeks of time, which he purportedly planned to spend in trial in Hawaii, to prepare for the instant case" [*Id*. at 3]. Regarding the grounds for this new continuance request, the Court stated:

> [T]hese grounds are far from the "extraordinary circumstances" necessary for another continuance at this point in this case. Notably, Attorney Martell is not counsel of record in this case, is not admitted to practice in this district, and has not filed a motion to appear pro hac vice. Therefore, it is unclear how Attorney Martell's availability would directly impact this trial. To the extent that Attorney Martell would seek to join as co-counsel in this case, the Court notes that joining co-counsel at this late date would also not constitute an "extraordinary circumstance," nor would Attorney Martell's personal affairs, the dates of which do not conflict with the current trial date. Furthermore, to the extent that Attorney Nasser relies on his need to cover matters for Attorney Martell while he attends to his personal affairs, this Court, much like the District of Hawaii, finds that it is time that Attorney Nasser "*finally* make this case a priority on his calendar" [*See* Dist. of Haw., Case No. 1:21-cr-101, Doc. 397 (emphasis in original)].

[*Id*. at 3–4].

Attorney Nasser and defendant appeared before the undersigned on May 6, 2024, for a final pretrial conference [Doc. 64]. At that time, Attorney Nasser raised, for the first time, concerns about defendant's competency to stand trial [Docs. 64, 65]. The Court ordered Attorney Nasser to file a written motion on that issue, and Attorney Nasser filed a motion for a psychiatric exam [*Id*.]. Judge McCook held a hearing on that motion [Doc. 69], granted the motion for a mental examination and evaluation [Doc. 72], and scheduled a competency hearing for August 16, 2024 [*Id*.]. Judge McCook also cancelled the trial date, which was set for three days later, on May 14, 2024 [Doc. 76, p. 1]. Judge McCook made the following findings regarding resetting the trial:

> Based upon Defendant Davis's need for a competency evaluation and that the Government and the Codefendant Glover have no objection to a continuance, the Court finds the ends of justice served by granting a continuance outweigh the interests of Defendants and the public in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A). In making this determination, the Court has considered the factors set forth in 18 U.S.C. § 3161(h). The time during which Defendant Davis is undergoing a mental evaluation of his competency is excludable, along with up to ten days for transportation to the designated BOP facility. *See* § 3161(h)(1)(A) & (F). Upon Defendant Davis's return from his evaluation and the Court's receipt of the evaluator's report, the undersigned will hold a competency hearing. *See* § 3161(h)(1) (excluding delay from proceedings concerning a defendant). Thereafter, counsel for Defendant Davis will need time to prepare for trial if Defendant is competent to proceed. Accordingly, the Court concludes that not granting a continuance would both result in a miscarriage of justice and deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. *See* § 3161(h)(7)(B)(i), (iv).

[*Id*. at 2]. Judge McCook reset the trial date for November 12, 2024, and found that all of the time between the motion hearing on May 10, 2024, and the new trial date was fully excludable under the Speedy Trial Act [*Id*. at 3].

On August 8, 2024, Attorney Nasser moved for a continuance of the competency hearing, citing an ongoing trial in Wayne County Circuit Court [Doc. 80]. Attorney Nasser represented that he had spoken with defendant about the continuance and his speedy trial rights, and defendant agreed with the proposed continuance [*Id*. at 2]. Judge McCook denied this motion with leave to refile if appropriate, noting that Attorney Nasser had not sufficiently explained why he was not available on the date that he previously selected for the competency hearing [Doc. 81]. Judge McCook also noted that the Wayne County Circuit Court case Attorney Nasser cited was, according to that court's public website, being handled by Attorney Nasser's associate, Attorney Martell, not Attorney Nasser [*Id*. at 1 n.1]. The competency hearing ultimately proceeded as scheduled and Judge McCook found defendant competent to proceed to trial [Doc. 87]. This case finally proceeded to trial on November 12, 2024 [Doc. 97].

### 2. Speedy Trial Act

As noted previously, the Speedy Trial Act requires that a trial commence within 70 days of the filing of the indictment or the defendant's appearance before a judicial officer of the court in which the charges are pending, whichever is later. 18 U.S.C. § 3161(c)(1). When a charge is dismissed or otherwise dropped, and thereafter, an indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the 70-day deadline is applicable to the subsequent indictment. 18 U.S.C. § 3161(d)(1). But the Speedy Trial Act sets forth several periods of time that are excluded from the 70-day period. 18 U.S.C. § 3161(h). Of relevance, the statute excludes any periods of delay (1) resulting from any proceeding to determine the

mental competency of the defendant; and (2) delay resulting from any pretrial motion. 18 U.S.C. §§ 3161(h)(1)(A), (h)(1)(D). Additionally, the Speedy Trial Act states that "[i]f the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense . . . any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge" is excludable. 18 U.S.C. § 3161(h)(5). Further, the Speedy Trial Act excludes any period of delay resulting from a continuance granted "at the request of the defendant or his counsel" if such was granted on the basis of "findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). For such delay to be excludable, however, the court must set forth in the record, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. *Id*. The statute contains specific factors the district court is to consider in granting a continuance under this section. 18 U.S.C. § 3161(h)(7)(B).

Defendant raises several arguments that go to whether the 70-day timeline under the Speedy Trial Act was exceeded. But, in the R&R, Judge McCook found that defendant had waived any Speedy Trial Act argument by raising it for the first time in a motion to dismiss filed after his trial and conviction [Doc. 177, p. 23]. Defendant does not address this finding of waiver [*See* Doc. 188]. And Judge McCook correctly pointed out that the Sixth Circuit has held that a defendant who does not move for dismissal before trial waives any right to dismissal under the Speedy Trial Act. *United States v. Coleman*, 835 F. App'x

36

73, 75 (6th Cir. 2020) (citing 18 U.S.C. § 3162(a)(2); *United States v. Brown*, 498 F.3d 523, 529 (6th Cir. 2007)).  Accordingly, the Court is in complete agreement with Judge McCook's conclusion that defendant has waived any right to dismissal under the Speedy Trial Act.

But, even if defendant had not waived his right to dismissal under the Speedy Trial Act, his arguments that the Act was violated in this case are unavailing.  Under the Speedy Trial Act, if the government files a motion to dismiss an indictment, the 70-day clock is tolled (rather than reset) if the government files the same charges again.  *United States v. Myers*, 666 F.3d 402, 406 (6th Cir. 2012) (citing 18 U.S.C. § 3161(h)(6)).  In other words, when the government moves to dismiss, the Speedy Trial Act time is "merely suspended until a new indictment is returned." *United States v. Perez*, 845 F.2d 100, 103 (5th Cir. 1998).  Here, 30 days of nonexcludable time elapsed in Case Number 3:22-CR-11 between defendant's February 22, 2022, arraignment, and the first motion to continue on March 24, 2022, which began a period of excludable time [Case No. 3:22-CR-11, Doc. 120].  The last continuance in Case Number 3:22-CR-11 excluded up through June 20, 2023 [*Id.*, Doc. 281].  However, when the indictment in this case was superseded to add defendant to this case, a trial date of July 17, 2023, was already set, and that trial date was applied to defendant [Doc. 18].

As noted, the Speedy Trial Act contemplates a situation where the government dismisses an indictment without prejudice and reindicts the defendant, in which case the time between the dismissal and the reindictment is excluded.   18 U.S.C. § 3161(h)(6).  However, this case is procedurally unusual, as the superseding indictment in this case was

filed on May 17, 2023 [Doc. 14], but the government did not move to dismiss the indictment against defendant in Case Number 3:22-CR-11 until June 7, 2023 [Case No. 3:22-CR-11, Doc. 295]. Nonetheless, the time up through June 20, 2023, had already been excluded in Case Number 3:22-CR-11; therefore, at the time that the government filed the motion to dismiss, all time, beyond the 30 days between defendant's arraignment and the first motion to dismiss had been excluded in Case Number 3:22-CR-11. Meanwhile, in this case number, Attorney Nasser first moved for a trial continuance of the July 17, 2023, trial date on June 16, 2023, so the excludable time in this case began on that date [Docs. 25, 33].

Given this, there are two unusual factors in calculating the Speedy Trial Act time here: (1) that the government indicted defendant in this case before moving to dismiss the indictment in Case Number 3:22-CR-11; and (2) the overlap of excludable time in Case No. 3:22-CR-11 and this case. In essence, the time up through June 20, 2023, had been excluded in Case Number 3:22-CR-11, based on the last motion to continue in that case, but the excludable time in this case began on June 16, 2023, when Attorney Nasser filed his first motion to continue in this case. Applying the Speedy Trial Act's rule that, in the case of a re-indictment after a dismissal by the government, the 70-day time from the first case would continue to run in the second case, arguably, no additional nonexcludable time occurred during the transition between the two cases, as Attorney Nasser's first motion to continue in this case occurred during the period of excluded time in Case Number 3:22-CR-11.

But, even if the Court were to view these facts in the light most favorable to defendant's allegations, perhaps the time between the superseding indictment in this case, filed on May 17, 2023, and the first motion to continue, filed June 16, 2023, could be deemed non-excludable, and cumulative with the 30 days of nonexcluded time that elapsed in Case Number 3:22-CR-11. An additional 30 days elapsed between May 17, 2023, and June 16, 2023. Combined with the 30 days of nonexcluded time that elapsed in Case Number 3:22-CR-11, this would result in a total of 60 days of nonexcluded time that elapsed, which is within the 70-day Speedy Trial Act deadline. Accordingly, even if defendant did not waive his right to any dismissal under the Speedy Trial Act, and even if the Court construed the facts of this case in the light most favorable to defendant's position, no Speedy Trial Act violation occurred.

Defendant also appears to challenge the exclusion of time from the Speedy Trial Act 70-day period based on his motions to dismiss, arguing that Attorney Nasser misrepresented defendant's wishes, the Court erroneously relied on Attorney Nasser's representations, and defendant's signature was not on the motions to continue, nor was he present in court for hearings on such motions [Doc. 188, pp. 16–17]. However, "[t]he Speedy Trial Act does not require a defendant's consent to stop the running of the speedy-trial clock." *United States v. Williams*, 753 F.3d 626, 635 (6th Cir. 2014) (rejecting defendant's argument that the district court abused its discretion by granting a motion to continue despite the absence of defendant's signature on the motion); *see also United States v. Stewart*, 628 F.3d 246, 254 (6th Cir. 2010) (noting that "where an attorney seeks a continuance without the client's approval, [the Sixth Circuit] has held that the Speedy Trial

Act 'does not require a defendant's consent to the continuance' in order for a judge to be able to grant a motion in furtherance of the ends of justice." (quoting *United States v. Sobh*, 571 F.3d 600, 603 (6th Cir. 2009)). And, to the extent that defendant now claims that Attorney Nasser's repeated statements that defendant was aware of and consented to the numerous defense continuance motions, such would be more appropriate raised in the context of an ineffective assistance of counsel claim for post-conviction relief. *See United States v. Tab*, 259 F. App'x 684, 699 (6th Cir. 2007) (noting that a claim of ineffective assistance of counsel is properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255, where the record regarding counsel's performance can be developed in more detail).

Defendant further alleges that no express findings were placed on the record that the ends of justice served by granting the defense continuances outweighed the best interest of the public and the defendant in a speedy trial, as required by 18 U.S.C. § 3161(h)(7)(A) [Doc. 188, pp. 16–17]. Defendant specifically contends that the only time any express findings were made was on May 10, 2024, when he was present in court to see if a competency evaluation was needed [*Id*. at 16]. But this contention is belied by the record. As set forth in detail *supra*, the Court made specific findings under § 3161(h)(7)(A), in writing, each time in granted a continuance of the trial date [Case No. 3:22-CR-11, Doc. 120, p. 4, Doc. 202, pp. 3–4, Doc. 246, p. 1, Doc. 273, p. 1, Doc. 281, p. 1; Case No. 3:22-CR-106, Doc. 33, p. 2, Doc. 45, p. 2, Doc. 49, p. 2, Doc. 53, pp. 4–5, Doc. 76, p. 2]. Because the express findings were made on the record, the time from these motions until the rescheduled trial date was properly excluded for Speedy Trial Act purposes.

40

Additionally, defendant objects that Judge McCook never calculated whether the 70-day Speedy Trial Act clock was exceeded [Doc. 188, pp. 17–18]. But Judge McCook did not need to calculate such, as she found that defendant's Speedy Trial Act claim was waived. Thus, Judge McCook's analysis was centered on defendant's argument under the Sixth Amendment right to a speedy trial, and the Supreme Court has held that no definitive time period is applicable to the Sixth Amendment right. *Barker*, 407 U.S. at 523 ("We find no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months."). Therefore, there was no error in Judge McCook's declination to calculate a number of days that elapsed under the Speedy Trial Act. Nonetheless, the Court has now concluded that the 70-day Speedy Trial Act clock was not exceeded.

Defendant also complains that Judge McCook granted continuances in this case after the undersigned warned against further continuances in Case Number 3:22-CR-11 [Doc. 188, p. 18]. But the Court's admonition against further continuances was not a blanket prohibition of further continuances, but rather, a warning that "exceptional circumstances" would be required for the grant of additional continuances [Case No. 3:22-CR-11, Doc. 273, p. 3]. The procedural changes that occurred through the dismissal of the first indictment against defendant and his addition to the indictment in this case certainly constituted exceptional circumstances that warranted providing additional time. Moreover, the Court's admonition came as a result of repeated continuance requests *by defendant*, and Judge McCook and the undersigned both subsequently granted continuances requested *by defendant*, despite the prior admonition. Accordingly, contrary to defendant's assertion, it can hardly be said that the granting of these continuances after

41

the Court's admonition was to defendant's "detriment" [*See* Doc. 188, p. 18]. Indeed, the Supreme Court has recognized that "[d]elay is not an uncommon defense tactic." *Barker*, 407 U.S. at 521. There was no error, and certainly none that rose to the level of a Speedy Trial Act violation, in the granting of continuances after the Court's admonishment in Case Number 3:22-CR-11.

The Court must address one final topic. Although unclear whether this matter specifically goes to defendant's Speedy Trial Act or Sixth Amendment speedy trial right arguments, defendant seems to argue that Judge McCook misconstrued his arguments as faulting only the *prosecution* for the delays in this case, when his argument is that the government as a whole, including *the Court*, was responsible for ensuring his right to a speedy trial [Doc. 188, p. 17]. Given the procedural history set forth *supra*, any allegation that the Court did not adequately protect defendant's right to a speedy trial is wholly unavailing. In fact, the undersigned repeatedly cautioned that the Court would require extraordinary circumstances for further continuance requests, after several continuances were granted at the behest of defense counsel [Case No. 3:22-CR-11, Doc. 273, p. 2, Doc. 281, p. 2; Case No. 3:22-CR-106, Doc. 53]. Moreover, the undersigned denied one continuance request filed by Attorney Nasser on the ground that it did not state whether defendant himself was aware of the request, which the Court found necessary to appropriately weigh the interests involved [Case No. 3:22-CR-11, Doc. 242]. And in more than one order, the Court admonished Attorney Nasser for his apparent delay tactics [Doc. 53 (noting Attorney Nasser's pattern of delay); Doc. 57 (denying continuance request and stating "it is time that Attorney Nasser 'finally make this case a priority on his calendar'")].

42

But the Court's ability to keep this case scheduled for trial was somewhat hampered by the fact that delays were repeatedly requested by Attorney Nasser, and defendant *retained* Attorney Nasser. Defendant had the right to counsel of his choice, regardless of the quality of that representation. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006) (finding that the right to select counsel of one's choice, which is regarded as the "root meaning of the constitutional guarantee" in the Sixth Amendment, is deprived "when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received."). Moreover, defendant's apparent claim that he did not know that Attorney Nasser was seeking continuances is implausible. Defendant certainly knew the amount of time that had passed without a trial on the charges and presumptively was in contact with Attorney Nasser about his trial date. Thus, at a minimum, he had the opportunity to inquire with his counsel as to why the trial date continued to be reset and learn that these continuances were at Attorney Nasser's behest.

For all of these reasons, defendant's objections to the R&R's conclusions regarding the Speedy Trial Act are **OVERRULED**.

### 2.    Sixth Amendment Speedy Trial Right

The Supreme Court has noted that Sixth Amendment speedy trial right cases must be evaluated on an *ad hoc* basis, employing a balancing test in determining whether a defendant has been deprived of this right. *Barker*, 407 U.S. at 530. Specifically, courts must consider: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. *Id*. Subsequently,

43

the Supreme Court refined this inquiry, stating that district courts must balance "whether the delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001) (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)).

Regarding the length of the delay, Judge McCook noted that the trial occurred more than two-and-a-half years after the initial trial date, which triggered an evaluation of the remaining *Barker* factors. Neither party appears to contest this conclusion, and the Court accepts it.

As to the second factor, reason for the delay, defendant objects that the delay is blamed "completely on" him for seeking continuances, but the R&R does not acknowledge that the government did anything in bad faith or was at fault [Doc. 188, p. 18]. However, defendant provides no explanation as to how the delay in his trial was a result of anything except his counsel's motions to continue, and the record makes clear that this is the reason for the extensive delay. As set forth *supra*, defense counsel requested more than 10 continuances between Case Number 3:22-CR-11 and this case, with the Court ultimately denying the last continuance request and forcing this case to finally proceed to trial.[8] At most, the government was responsible for defendant's trial date being modified from June

---

[8] Although, Attorney Nasser succeeded in obtaining one final continuance after that denial by raising defendant's competency to proceed to trial for the first time at the final pretrial conference [*See* Docs. 64, 76].

20, 2023, as set in Case Number 3:22-CR-11, to July 17, 2023, when defendant was added to the superseding indictment in this case [Doc. 14]. But it is somewhat difficult to attribute this delay to the government alone, as defense counsel moved to continue the July 17, 2023, trial date on June 16, 2023, prior to the previously-scheduled June 20, 2023, trial date [Doc. 25]. Regardless, even attributing this 27-day delay to the government, viewed in light of the delay of over two-and-a-half years, the reason for the delay is overwhelmingly attributable to defendant's continuance requests.

As to the third factor, defendant's assertion of the right to a speedy trial, defendant objects that he sufficiently asserted his speedy trial right by requesting release on bond [Doc. 188, p. 19]. In support, defendant cites the Sixth Circuit's decision in *Redd v. Sowders*, 809 F.2d 1266 (6th Cir. 1987) [*Id.*]. But Judge McCook specifically acknowledged defendant's requests for pretrial release and cited *Redd* for the proposition that such could be deemed an assertion of the right to a speedy trial [Doc. 177, p. 22]. Nonetheless, Judge McCook found *Redd* somewhat distinguishable, as, in that case, the defendant sought a bail reduction after filing several motion for a speedy trial, whereas, in this case, defendant requested pretrial release and then filed numerous motions to continue the trial, with no express assertion of the right to a speedy trial until after the trial occurred [*Id.*]. Defendant does not address this distinction.

In fact, the Sixth Circuit in *Redd* noted that "[t]he timeliness, vigor and frequency with which the right to a speedy trial is asserted are probative indications of whether a defendant was denied needed access to a speedy trial over his objection." *Redd*, 809 F.2d at 1271. But here, the only assertion of the right to a speedy trial was defendant's motion

45

for pretrial release in this case [Doc. 21]. This motion, which was not an express assertion of the right to a speedy trial, cannot be viewed as "vigorous" or "frequent." Moreover, even construing this request for pretrial release as a request for a speedy trial, defendant's subsequent repeated requests for trial continuances undercut any such assertion of the speedy trial right. *See O'Dell*, 247 F.3d at 672 ("Given the multitude of motions filed by Defendant, we believe that he has woven such a self-destructive tapestry in the instant appeal. In light of Defendant's own conduct, we cannot say that he effectively asserted his constitutional right to a speedy trial."). The Court finds no error in the conclusion that this factor does not weigh in defendant's favor.

As to the fourth factor, prejudice, the Supreme Court has stated that prejudice must be assessed in light of the interests of defendants the speedy trial right was designed to protect, namely, (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. This third consideration is the most serious. *Id*. The defendant may also suffer prejudice if defense witnesses are unable to recall accurately events of the distant past. *Id*.

Defendant alleges several examples of prejudice from the trial delay. First, defendant appears to assert that, as a result of the delay, a constructive amendment to the indictment occurred because he was initially given notice that DEA Forensic Chemist Heather Keith tested the fentanyl and methamphetamine in the case, but was later provided a lab report from DEA Forensic Chemist Alan Randa regarding the testing of methamphetamine [Doc. 188, pp. 18–20]. Defendant appears to contend that the

46

methamphetamine tested by Randa was "from" a different conspiracy not charged in his indictment [*Id*. at 18–19, 21]. He argues that this resulted in a fatal variance at trial from the charge filed [*Id*. at 21]. But defendant does not explain how this alleged prejudice was caused by the delay in his trial date, other than the fact that he received notice of Randa's testimony later in the process. Ultimately, this argument appears to be more related to other claims, discussed *infra*, rather than any alleged prejudice that could be tied to the trial delay.

Next, defendant asserts that he was prejudiced by the unavailability of DEA Agent Ashley Scott at trial, who was the lead case agent [Doc. 188, p. 21]. But the record does not reflect that Agent Scott was unavailable due to the delay in the trial, only that she did not testify [*See* Doc. 154, pp. 34, 38 (defendant's closing argument)]. Moreover, the record does not reflect that defendant attempted to call Agent Scott to testify as a witness at trial. Nor does defendant specifically allege how the lack of Agent Scott's testimony prejudiced his defense.

Defendant further argues that his defense was prejudiced as a result of Agent Kari Sams's testimony at trial that she would have to review the case files to find a report associating a specific phone number with the defendant, and her later testimony that she had not reviewed the case files [Doc. 188, pp. 21–22]. Defendant characterizes this as Agent Sams being unable to accurately recall events of the distant past [*Id*. at 22].

The record reflects that, on the first day of trial, during cross-examination of Agent Sams, the following occurred:

Q:   In all the reports that I see unless you have one at your fingertips that you're aware, I don't see anything with you specifically as an analyst and expert with cell phones requesting any cell phone records related to a 623 number which is correlated to a Cory Davis. Would you agree with me that?

A:   That I don't have a report in my hand, correct.

Q:   Okay. And nor can you produce a report, right? Sitting here today, can you produce a report right now that says Cory Davis is associated with a 623 number?

A:   There's documentation through this case.

Q:   Okay. So that means that you can come back perhaps tomorrow and have a report in your hand that states that, correct?

A:   I would have to go back through the case, yeah.

[Doc. 151, p. 135]. Subsequently, the defense recalled Agent Sams, and elicited the following:

Q:   When we were here last on Tuesday, do you remember I was asking you some questions?

A:   Yes.

Q:   You remember I asked specifically questions about Enterprise and looking through your reports and doing these things, correct?

A:   Correct.

Q:   Do you remember testifying that you could produce these items, correct?

A:   Yes.

Q:   Do you remember me saying, hey, listen. Maybe I'll even call you tomorrow, agreed?

A:   I don't recall what you said.

Q: Okay, but I'm calling you back. Did you have an opportunity to review your reports?

A: I've not looked at my reports, no.

Q: I'm sorry?

A: I haven't looked at my reports.

Q: So when you said that you can find statements related to Enterprise and phone numbers, that was inaccurate?

A: No. I said they were in the case file. We did – there are reports related to Enterprise records and the like, so.

Q: Okay. Did you, do you recall me asking can you produce these reports and look at them?

A: I remember you asking that, yes.

Q: Okay. So sitting here today some two days removed you haven't done that, correct.

A: Do I have those reports in my hand, no.

Q: Have you looked through your reports to find that information?

A: No.

[Doc. 153, pp. 200–01].

This testimony does not appear to reflect any issue with Agent Sams's memory of events, but rather, relates to whether or not Agent Sams could produce specific reports from the case file. The Court does not see how this testimony indicates any prejudice stemming from the trial delay in this case. But, even if this reflects some lapse of memory, the Supreme Court has stated that minor lapses of memory that have no significant impact on the outcome are insufficient. *See Barker*, 407 U.S. at 534. And defendant does not explain

49

how Agent Sams's production of reports involving Enterprise and his phone number would have had a significant impact on the outcome of this case, particularly given the overwhelming evidence against defendant.

Defendant also contends that his detention hearing before Judge McCook in this case was "fruitless" because he was still detained under the indictment in Case Number 3:22-CR-11 [Doc. 188, p. 22]. But again, this is not prejudice that is tied to the delay in the trial. Regardless, at the detention hearing Judge McCook concluded, after a hearing, that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community, noting the weight of the evidence against defendant, the lengthy period of incarceration defendant would be subject to if convicted, defendant's prior criminal history, his participation in criminal activity while on probation, parole, or supervision, his history of violence or use of weapons, and his history of alcohol or substance abuse [Doc. 29]. Judge Poplin's prior detention order in Case Number 3:22-CR-11 played no part in that determination.

Finally, defendant alleges that he was prejudiced because he could not contact witnesses with information about his whereabouts on December 21, 2022, due to his lengthy pretrial detention [Doc. 188, p. 23]. But defendant was represented by counsel, and it is unclear why he was unable to provide the names of potential witnesses to his counsel and why defense counsel could not have contacted those witnesses on defendant's behalf.

Certainly, defendant suffered some of the typical prejudice any defendant would experience as a result of pretrial detention. In the R&R, Judge McCook acknowledged as

50

much, noting that "Defendant undoubtedly suffered some prejudice because he was detained" [Doc. 177, p. 23]. But the Court is in complete agreement with Judge McCook's conclusion that "this prejudice is insufficient to carry the day when Defendant caused the delay and only weakly asserted his right to a speedy trial" [*Id.*].

For all of these reasons, defendant's objections to the R&R's conclusions regarding his Sixth Amendment right to a speedy trial are **OVERRULED**.

### E. Prosecutorial Harassment

Regarding prosecutorial harassment, Judge McCook summarized the procedural history and defendant's arguments as follows:

> [O]n May 17, 2024, District Judge Varlan denied Defendant's motion to dismiss the indictment for prosecutorial harassment made through counsel [Doc. 73 p. 16]. In that motion, Defendant alleged that the Government gained a "tactical advantage" and "disregarded" Federal Rule of Criminal Procedure 48(a) by not obtaining leave of Court to dismiss the Indictment in case number 3:22-CR-11 without prejudice before charging him in this case [Doc. 50 p. 3; *see* Doc. 73 pp. 11–12]. The District Judge found that the Government complied with Rule 48(a) by filing a motion to dismiss without prejudice in case number 3:22-CR-11 [*Id.* at 14–15]. In its motion to dismiss 3:22-CR-11, the Government stated that defense counsel had no objection to the motion, and Defendant filed no response objecting to the Government's request between the time the Government filed its motion on June 7, 2023, and when the Court granted the motion on August 2, 2023 [*Id.* at 15]. Judge Varlan found that Defendant demonstrated no prejudice from the dismissal of case number 3:22-CR-11, nor did the Government engage in "prosecutorial harassment" against which Rule 48(a) is designed to protect [*Id.* at 16].
>
> Defendant [now] asks the Court to reconsider its denial of his motion to dismiss based on prosecutorial harassment because of "newly discovered evidence" [Doc. 139 p. 2; Doc. 165 p. 10]. He contends that in January 2025, he reviewed the docket sheets from both cases and discovered that at the time he appeared for an initial appearance and arraignment on the Superseding Indictment on June 7, 2023, he had a trial date of June 20, 2023, and a pretrial conference on June 7, 2023, in case number 3:22-CR-11 [*Id.*]. He stated that

51

based upon his review of Federal Rule of Criminal Procedure 13, he believes
consolidation of the two cases, not a Superseding Indictment, was the only
legitimate way to add him to case number 3:22-CR-106 [*Id.*]. Finally,
Defendant argues that the Government admitted in its response to his motion
to dismiss for a speedy trial violation that a one-month delay in trial could be
attributed to the Government [Doc. 139 p. 2; Doc. 165 pp. 10–11].

[Doc. 177, pp. 24–25].

Judge McCook concluded that none of these allegations are new and the manner
and timing of defendant's addition to the Superseding Indictment and dismissal from Case
Number 3:22-CR-11 were squarely before the district judge when denying the prior motion
to dismiss for prosecutorial harassment [*Id.* at 25]. Further, Judge McCook rejected
defendant's claim that the Court erred in not holding a hearing or making factual findings
about the Government's reasons for dismissing Case Number 3:22-CR-11, finding that a
hearing was not necessary because the motion to dismiss was unopposed [*Id.*]. Judge
McCook states that defendant has not demonstrated bad faith on the part of the government
or prejudice to himself from that dismissal, noting that it was defense counsel's requests
for continuances in Case Number 3:22-CR-11 that resulted in the Court's admonition that
no further continuances would be granted, and it was defense counsel who gained the
tactical advantage of obtaining a continuance in this case, despite the prior admonition in
Case Number 3:22-CR-11 [*Id.* at 25–26].

As Judge McCook noted, the Court previously denied defendant's counseled motion
to dismiss for prosecutorial harassment [Doc. 73]. Thus, defendant's arguments at this
stage must be viewed in the light of the motion for reconsideration from which they stem
[*See* Doc. 139]. "As a general principle, motions for reconsideration are looked upon with

52

disfavor unless the moving party demonstrates: (1) a manifest error of law; (2) newly discovered evidence which was not available previously to the parties; or (3) intervening authority." *United States v. Leedy*, 345 F. Supp. 3d 941, 954–55 (S.D. Ohio 2018) (internal quotation marks omitted). However, as discussed *infra*, defendant's objections to the R&R on the topic of prosecutorial harassment appear to be attempts to rehash and/or supplement the arguments the Court has already rejected, without any basis in newly discovery evidence or intervening authority.

Defendant repeatedly complains that the government's motion to dismiss in Case Number 3:22-CR-11 provided no factual basis for the dismissal without prejudice, and the Court did not conduct a hearing on the motion to determine the factual basis for such [Doc. 188, pp. 23–24]. But, in its prior order, the Court noted that defendant provided no support for the contention that the Court needed to inquire about the basis for the government's motion to dismiss [Doc. 73, p. 15]. Defendant still submits no compelling support in support of this contention. Defendant now appears to rely on the Supreme Court's statement in *Gregory v. Stetson*, 133 U.S 579, 586 (1890) that "[i]t is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it" [Doc, 188, p. 23].[9] But that case arose in the context of an issue about the proper parties to a civil action. *Gregory*, 133 U.S. at 586–87.

---

[9] Defendant misquotes the case as stating: "It is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actually or directly before it" [Doc. 188, p. 23].

53

It has no relevance as to whether the Court was required to hold a hearing on the government's unopposed motion to dismiss in this criminal matter.

Defendant also alleges that the prosecutor was motivated by a desire to harass him, as evidenced by the fact that the prosecutor superseded the indictment in this case, rather than consolidating the cases under Rule 13 [Doc. 188, p. 24]. He further asserts that the government gained several tactical advantages from the dismissal, including (1) not having to meet the requirements of Rule 8(b) and show an act of defendant and Glover committed in furtherance of the conspiracy occurred in this district; and (2) not having to submit for the record why it added defendant to the new indictment [*Id*. at 25–27]. Ultimately, none of these arguments are based on newly discovered evidence, intervening changes of law, or a manifest error of law.[10] Instead, they are attempts at a second bite at the apple with regard to defendant's prior motion to dismiss for prosecutorial harassment, which is not a proper ground for reconsideration. *See Osuna v. Nat'l Collegiate Athletic Ass'n*, No. 3:25-cv-62, 2025 WL 1463149, at *1 (E.D. Tenn. May 21, 2025) (Atchley, J.) ("Motions for reconsideration 'should not be used liberally to get a second bite at the apple.'" (quoting *State Farm Mut. Auto. Ins. Co. v. Angelo*, 95 F.4th 419, 435 (6th Cir. 2024)).

Finally, in this section of his objections, defendant also provides a laundry list of general complaints, including that: (1) codefendant Glover was not properly prosecuted in this venue; (2) section 846 is unconstitutional as applied; (3) the government was able to

---

[10] "A manifest error of law is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Elza v. United States*, 335 B.R. 654, 657 (E.D. Ky. Jan. 5, 2006) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). None of defendant's arguments rise to that level.

54

change his trial date in violation of a court order; and (4) the government manipulated the jury into believing that a methamphetamine conspiracy from Case Number 3:21-CR-73 was charged in this case, in violation of defendant's Fifth Amendment right to indictment by grand jury [Doc. 188, pp. 26–27]. But none of these allegations are relevant to whether the Court's denial of defendant's motion to dismiss for prosecutorial harassment should be reconsidered, nor the R&R's analysis of that motion. Moreover, with the exception of the argument regarding venue over Glover's prosecution, which is irrelevant to defendant's prosecution in this venue, the Court has addressed each of these allegations either *supra* or *infra*.

For all of these reasons, defendant's objections to the R&R's conclusions regarding prosecutorial harassment are **OVERRULED**.

### F. Failure to State an Offense

Judge McCook summarized defendant's arguments regarding stating an offense as follows:

> Defendant argues that the Superseding Indictment fails to state an offense because it does not allege a violation of 21 U.S.C. § 843(b), which prohibits the use of a communications facility in the commission of drug trafficking [Doc. 164 pp. 14–15]. Defendant contends that at trial, the Government presented and repeatedly emphasized evidence of a May 20, 2022 telephone call between Defendant and a coconspirator Amber Nanney concerning a methamphetamine delivery [Doc. 164 pp. 2–5]. He also asserts that the Superseding Indictment fails to provide adequate notice of the charges because it does not allege a violation of § 843(b), nor does it allege the phone call forming the basis of that offense [*Id.* at 8–9, 14]. Defendant argues that this charging error permitted the Government to manipulate the evidence to prejudice him and caused him to have to defend against a violation of § 843(b) despite not being charged with that offense [*Id.* at 15].

[Doc. 177, p. 26].

Judge McCook found that the Superseding Indictment in this case set forth the elements of a conspiracy to distribute controlled substances, along with the essential facts (dates, location, substance types, and coconspirators), and provided notice of the charge sufficient to allow defendant to prepare a defense and protect him from double jeopardy [*Id*. at 27]. While defendant believes he should have been charged with a violation of § 843(b), the prosecutor had the discretion to charge defendant with a drug conspiracy rather than a violation of § 843(b) [*Id*. at 27–28]. As to defendant's allegations that the government manipulated the evidence and violated his confrontation rights by listing DEA Senior Chemist Heather Keith as a witness to identify the controlled substances and then subsequently listing DEA Forensic Chemist Alan Randa, Judge McCook noted that both Ketih and Randa testified at trial regarding the fentanyl and methamphetamine, respectively [*Id*. at 28]. Defendant was able to confront both witnesses and fails to show any improper purpose behind the charging decision [*Id*.].

In his objections, defendant appears to shift his argument away from alleging that the government should have charged him with a violation of § 843(b), instead emphasizing his argument that the government "used" methamphetamine "from" the conspiracy charged in Case Number 3:21-CR-73 [Doc. 188, p. 29]. Defendant's argument in this regard is difficult to understand. As best the Court can decipher, defendant asserts that, because he was only given notice of Keith's reports in Case Number 3:22-CR-11, and never received notice of Randa's reports on the testing of methamphetamine until after he was added to Case Number 3:22-CR-106, the government based the trial evidence on "different" methamphetamine than the methamphetamine charged in the indictment [*Id*. at 30–32].

56

And, specifically, he contends that the methamphetamine that was used to convict him at trial was the same methamphetamine alleged in Case Number 3:21-CR-73, charging Amber Nanney and Fabiola Desrosiers, but not defendant [*Id.* at 29, 31]. Defendant, thus, argues that the indictment was constructively amended in violation of the Fifth Amendment [*Id.* at 33].

There are several issues with defendant's arguments. First, discovery that defendant did or did not receive in the course of Case Number 3:22-CR-11 has no bearing on what the charge in Case Number 3:22-CR-106 encompassed. The government could have charged defendant in Case Number 3:22-CR-106 differently than in Case Number 3:22-CR-11, and defendant points to no authority to the contrary. Accordingly, whether defendant received, in discovery, reports about Randa's testing of methamphetamine in Case Number 3:22-CR-11 is irrelevant for purposes of whether the methamphetamine tested by Randa was the methamphetamine defendant was charged with in Case Number 3:22-CR-106.

The superseding indictment in this case charged, in its sole count that:

from on or about November 1, 2020, through and including on or about February 16, 2022, in the Eastern District of Tennessee and elsewhere, the defendants, CORY J. DAVIS, also known as "Megatron," "Mega," and "C," and SHELBY GLOVER, did combine, conspire, confederate, and agree with Derrick I. Williams, also known as "Dee," Areyal L. Rollins, Shauna D. Brown, Ariel N. Clayton, Latesha T. Brown, Michael G. Ramis, also known as "Ace" and "Bunky," Sierra McCowan, Todd M. Besteda, also known as "Nephew," Mitchell Callan, Derick Dover, William Stackhouse, also known as "Stacks," *Amber Nanney, and Fabiola Desrosiers, all charged in other instruments* and other co-conspirators, to knowingly, intentionally and without authority, distribute fifty (50) grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, one (1) kilogram or more of a quantity of a mixture and substance containing

57

a detectable amount of heroin, a Schedule I controlled substance, and four hundred (400) grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)

[Doc. 14, pp. 1–2 (emphasis added)].[11]

Defendant objects to Judge McCook's citation of *United States v. Sampson*, 371 U.S. 75, 78–79 (1962), arguing that *Sampson* is distinguishable because it "was based on the district court dismissing an indictment [prior to] trial, before any evidence was presented to a jury on the indictment" [Doc. 188, p. 28 (alterations in original)]. But almost any case addressing the sufficiency of an indictment will arise in a pretrial context, because that is the appropriate time for a challenge to the sufficiency of an indictment to be raised. Moreover, Judge McCook only cited *Sampson*, along with another case, for the proposition that "[t]he test of an indictment is whether it sufficiently charges an offense" [Doc. 177, p. 26]. This is simply another way to state the rule that an "indictment is generally sufficient if it fully, directly, and expressly sets forth all the elements necessary to constitute the offense intended to be punished," *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (internal quotation marks and alterations omitted), a key standard in assessing challenges to indictments. *See also United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007); *United States v. Schaffer*, 586 F.3d 414, 422 (6th Cir. 2009); *United States v. Killingsworth*, No. 21-3028, 2022 WL 294083, at *2 (6th Cir. Feb. 1, 2022). The Court finds no error in the inclusion of this citation.

---

[11] Ultimately, the jury only found defendant guilty for a conspiracy involving methamphetamine and fentanyl, not heroin [Doc. 104].

Defendant further contends that Judge McCook's findings were contrary to *Hamling v. United States*, 418 U.S. 87 (1974), as "[t]he specific offense charged in 3:22-CR-106 was not the specific offense charged in 3:21-CR-00073" [Doc. 188, p. 32 (internal brackets omitted)]. But *Hamling* appears to cut against defendant's argument. In that case, the Supreme Court concluded that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117 (internal quotation marks omitted). Defendant does not appear to even contest whether all of the elements of the offense charged were set forth in the superseding indictment in this case. The Court does not find that *Hamling* supports defendant's claim of an insufficient indictment.

To the heart of defendant's argument, certainly, the conspiracy Amber Nanney and Fabiola Desrosiers were charged with in Case Number 3:21-CR-73 was part of the larger conspiracy that defendant was charged with in this case. Indeed, the superseding indictment specifically lists Nanney and Desrosiers as coconspirators, and notes that they were charged in a separate instrument [Doc. 14]. And defendant provides no support for his apparent contention that all of the coconspirators in the same conspiracy were required to be charged in the same indictment. The Court finds no error in Judge McCook's rejection of this argument.

Defendant also objects to the conclusion that his Confrontation Clause rights were not violated by the introduction of Randa's testimony [Doc. 188, p. 33]. But defendant

simply reverts to his argument that he was not given notice of Randa's report in Case Number 3:22-CR-11 [*Id.*]. It is unclear how defendant believes this amounts to a Confrontation Clause violation. "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination[.]" *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis omitted). Randa testified at trial and was subject to cross-examination [Doc. 153, pp. 173–81]. Accordingly, defendant had the opportunity to confront Randa about the evidence against him.

Defendant next appears to allege that a *Brady* violation occurred because Randa's report was not disclosed within the discovery deadline [Doc. 188, p. 31]. In *Brady v. Maryland*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). But defendant does not assert that Randa's report was never disclosed to him; instead, he simply asserts that it was not disclosed within a certain deadline. Moreover, defendant does not assert that Randa's report was favorable to him, and, indeed, throughout his argument, suggests that the evidence from Randa was not favorable to him and prejudiced his defense. Accordingly, the Court cannot find that Randa's report was *Brady* material. The Court finds no error in the conclusion that no *Brady* violation occurred.

Finally, defendant contends that the indictment in this case does not protect him from double jeopardy with regard to the fentanyl conspiracy that occurred in Atlanta, as the indictment states that the conspiracy happened in this district, which defendant disputes

60

[Doc. 188, p. 34]. But, in fact, the superseding indictment charges him with a drug conspiracy that occurred "in the Eastern District of Tennessee *and elsewhere*" [Doc. 14, p. 1 (emphasis added)]. And the Court has explained in detail throughout this memorandum opinion and order why this conspiracy charge was properly brought in this district.

For all of these reasons, defendant's objections to the R&R's conclusions regarding the sufficiency of the charge in the superseding indictment are **OVERRULED**.

### G. Additional Motions to Dismiss

The Court notes that defendant also has additional motions to dismiss pending that are not encompassed in the R&R [Docs. 125, 187, 189]. The Court has fully reviewed each of these filings and concludes that each raises the same issues as the motions addressed in this R&R [*See id*.]. Accordingly, for the reasons set forth in the R&R and this memorandum opinion and order, these motions to dismiss [Docs. 125, 187, 189] are also **DENIED**.

## IV. Conclusion

For the reasons above, defendant's objections [Doc. 188] are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 177] in whole and **DENIES** defendant's defendant's motions [Docs. 125, 135, 138, 139, 164, 187, 189].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE